# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 11, 2022          Decided August 18, 2023

No. 21-5108

WATKINS LAW & ADVOCACY, PLLC,
APPELLANT

v.

UNITED STATES DEPARTMENT OF JUSTICE, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-01974)

———

*Seth A. Watkins* argued the cause and filed the briefs for appellant.

*Jeremy S. Simon*, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief were *R. Craig Lawrence* and *Jane M. Lyons*, Assistant U.S. Attorneys.

Before: SRINIVASAN, *Chief Judge*, MILLETT, *Circuit Judge*, and TATEL, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* SRINIVASAN.

2

SRINIVASAN, *Chief Judge*:  Appellant Watkins Law & Advocacy, PLLC submitted requests under the Freedom of Information Act to various federal agencies including the Federal Bureau of Investigation, the Department of Justice, and the Department of Veterans Affairs.  Watkins sought records concerning the process by which the names of certain veterans and other VA beneficiaries are added to a background check system that identifies persons barred from possessing firearms for having been adjudicated as "mental defective[s]."  18 U.S.C. § 922(g)(4).

Dissatisfied with the agencies' responses, Watkins initiated this FOIA action in the district court.  The district court granted summary judgment to the agencies on almost all claims (and to Watkins on the remaining claims, none of which are at issue here).  Watkins appeals the district court's grant of summary judgment to the FBI and DOJ on the adequacy of their searches and to the VA on its withholding of documents based on the deliberative-process and attorney-client privileges.

We affirm the district court's grant of summary judgment in favor of the FBI and DOJ.  But we vacate the district court's grant of summary judgment to the VA and remand for further proceedings.  The VA did not satisfy its burden to show that the withheld documents are exempt from disclosure.

I.

Watkins is a D.C.-based law firm that represents a number of veterans.  It frequently assists individuals entitled to VA benefits—i.e., veterans and other beneficiaries—whom the National Instant Criminal Background Check System (NICS) indicates have been "adjudicated as [] mental defective[s]."  18 U.S.C. § 922(g)(4); *see Nat'l Rifle Ass'n of Am., Inc. v. Reno*,

3

216 F.3d 122, 125 (D.C. Cir. 2000).  Such individuals cannot possess firearms or ammunition.  18 U.S.C. § 922(g)(4).

A veteran or other beneficiary whom the VA determines "lacks the mental capacity to contract or to manage his or her own affairs, including disbursement of funds without limitation," 38 C.F.R. § 3.353(a), is considered "adjudicated as a mental defective" for purposes of the NICS, 27 C.F.R. § 478.11; *see* 18 U.S.C. § 922(g)(4).  Tens of thousands of veterans and other VA beneficiaries are added to the NICS each year as having been "adjudicated as [] mental defective[s]" based on the VA's determinations.

Pursuant to the NICS Improvement Amendments Act of 2007, federal agencies with records of individuals who have been "adjudicated as [] mental defective[s]" must report the information in their records to the Attorney General upon request and at least quarterly.  34 U.S.C. § 40901(e)(1)(A)–(C). Agencies must also notify the Attorney General of any updates. *Id.* § 40901(e)(1)(D).  The Attorney General, in turn, must submit an annual report to Congress describing each agency's compliance with the reporting and notification requirements. *Id.* § 40901(e)(1)(E).

A.

Seeking records concerning how the VA provides information about veterans and other VA beneficiaries to the Attorney General for purposes of the NICS, Watkins submitted FOIA requests to the FBI, DOJ, VA, and Bureau of Alcohol, Tobacco, and Firearms.  This appeal concerns only the requests to the FBI, DOJ, and VA.

Watkins's requests to the FBI and DOJ sought three categories of records:  (i) memorandums of understanding

4

between the VA and DOJ or the FBI "concerning or relating to submission by the VA to the DOJ/FBI of information on persons to be prohibited from purchasing a firearm"; (ii) records setting out "the providing of information . . . by the VA to the DOJ/FBI for inclusion in the [NICS]"; and (iii) "all communications made by or on behalf of the United States Attorney General ('OAG') to the VA requesting or requiring that the VA submit to DOJ/FBI information on persons to be prohibited from purchasing a firearm," and responses from the VA. Email from Seth A. Watkins to FBI FOIA Requests (Oct. 21, 2015), J.A. 94–95; *see also* Submission from Seth A. Watkins to DOJ FOIA Requests (Oct. 21, 2015), J.A. 75; Email from Seth Watkins to Seth Watkins (Oct. 21, 2015), J.A. 77–78 (memorializing FOIA request to DOJ).

Watkins sought from the VA two related categories of records: (i) records "which set out or reflect the VA's approved agency decision-making procedures" in effect at any time since 2013 "concerning whether the name of a veteran is to be reported, identified, or otherwise referred for inclusion in the Mental Defective File" of the NICS; and (ii) records "indicating the total number of names of veterans reported, identified, or otherwise referred by the VA each year (or month or quarter) for inclusion in the Mental Defective File" of the NICS since 2010. Email from Seth A. Watkins to OGC FOIA Requests (Oct. 14, 2015), J.A. 47–48 (emphasis omitted).

Watkins included in each of its FOIA requests language asking that, if the receiving component "does not have custody or control over certain requested and responsive records but knows or believes that another component of [the agency] subject to FOIA does, please forward this FOIA Request to the appropriate person and inform us that you have done so." Email from Seth A. Watkins to FBI FOIA Requests (Oct. 21, 2015), J.A. 95; Email from Seth Watkins to Seth Watkins (Oct.

5

21, 2015), J.A. 78; Email from Seth A. Watkins to OGC FOIA
Requests (Oct. 14, 2015), J.A. 47–48.

In response, the FBI informed Watkins that its search
located responsive records that had previously been processed
for another FOIA request, but it was withholding the records in
their entirety.  DOJ advised Watkins that it had not located any
responsive records.  The VA did not respond.  Dissatisfied with
the FBI's withholdings and the DOJ's failure to unearth
responsive records, and seeking to compel the VA to respond
to its request, Watkins then filed this lawsuit.

B.

Following Watkins's filing of the complaint, the FBI
conducted another search and determined that the pages it
initially deemed responsive were not in fact responsive.  DOJ
released with excisions nineteen pages of material that the VA
had referred to it for processing.  And the VA released several
hundreds of pages of documents, including a 1998
Memorandum of Understanding between the VA and the FBI,
but also withheld hundreds of responsive documents.

On cross-motions for summary judgment, Watkins
challenged the adequacy of the FBI's and DOJ's searches, and
the agencies contended that their searches were reasonably
calculated to uncover responsive documents.  Each agency
submitted a supporting declaration:  the FBI submitted a
declaration by David M. Hardy, the Section Chief of the
Record/Information Dissemination Section of the Information
Management Division, and DOJ submitted a declaration by
Vanessa R. Brinkmann, Senior Counsel in the Office of
Information Policy.

6

In asserting that the agencies' searches were inadequate, Watkins highlighted additional search term combinations that it believed the agencies should have used.  Watkins also observed that the FBI failed to locate the 1998 Memorandum of Understanding between the VA and the FBI that the VA had released.  The FBI then conducted another search using most of Watkins's proposed search term combinations and submitted a second declaration describing the search.

Watkins also challenged the VA's withholdings.  (Watkins challenged DOJ's withholdings as well, but the propriety of those withholdings is not before us in this appeal.)  The VA justified its withholdings based on both the deliberative-process and attorney-client privileges.  In support, the VA submitted a *Vaughn* index and a declaration by Tracy Knight, a Government Information Specialist in the VA Office of General Counsel's Information Law Group.  Watkins asserted that the VA had failed to meet its burden to show that the documents were exempt from disclosure and that segregable information had been disclosed.

The district court granted summary judgment to the FBI and the VA.  *Watkins L. & Advoc., PLLC v. U.S. Dep't of Veterans Affs.*, 412 F. Supp. 3d 98, 122–23 (D.D.C. 2019).  But the court denied summary judgment as to DOJ.  *Id.* at 123.  Finding that DOJ's "search terms [were] deficient because they exclude[d] obvious topics such as mental health, which goes to [the] very heart of plaintiff's FOIA request, and commonly used abbreviations," the court remanded.  *Id.* at 120–21, 123.

C.

On remand, DOJ conducted a supplemental search using Watkins's suggested search term combinations.  That search located additional responsive documents, including two annual

7

reports from the Attorney General to Congress pursuant to the NICS Improvement Amendments Act of 2007.  DOJ released the newly located documents, but with excisions based on FOIA exemptions and redactions of "non-responsive" sections.

On renewed cross-motions for summary judgment, DOJ submitted a second declaration attesting that the supplemental search rectified the deficiency in DOJ's initial search and justifying DOJ's withholdings.  2d Brinkmann Decl. ¶¶ 8–15, J.A. 756–61.  The Declaration also explained that DOJ searched records of the Office of the Attorney General, not other DOJ components, because Watkins's FOIA request sought records specifically of that Office.  *Id.* ¶ 13, J.A. 759–60.  Watkins asserted that DOJ should have located certain other documents, even if that meant broadening the locations searched, and should have used a more recent cut-off date for its supplemental search.  Watkins also challenged DOJ's withholdings.

The district court granted summary judgment in part to DOJ.  *Watkins L. & Advoc., PLLC v. U.S. Dep't of Veterans Affs.*, No. 17-1974, 2021 WL 1026173 (D.D.C. Mar. 17, 2021).  The court concluded that DOJ's supplemental search was adequate and its withholdings were appropriate, *id.* at *4–5, *7–9, but the court ordered DOJ to produce in full the documents containing sections that had been redacted as "non-responsive," *id.* at *6–7.

II.

Watkins appeals the grant of summary judgment to the FBI and DOJ on the adequacy of their searches and to the VA on its withholdings.  Our review is de novo.  *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021) (*RCFP II*).

8

A.

We first address Watkins's challenges to the grant of summary judgment in favor of the FBI and DOJ on the adequacy of their searches for responsive documents. "In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). An agency need not "search every record system" or "demonstrate that all responsive documents were found and that no other relevant documents could possibly exist." *Id.* at 68 (citation omitted). Rather, "[a]n agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quotation marks and citation omitted).

1.

We begin by addressing the adequacy of the FBI's search. The FBI initially took three steps. First, it searched its Central Records System, which contains information that the FBI gathers "in the course of fulfilling its integrated missions and functions as a law enforcement, counterterrorism, and intelligence agency." 1st Hardy Decl. ¶ 23, J.A. 319. The FBI thought it unlikely that a search of the Central Records System would identify responsive documents because Watkins sought documents not specifically tied to an FBI investigation, but the FBI nonetheless conducted the search "in an abundance of caution." *Id.* ¶¶ 31–32, J.A. 323. Second, the FBI searched the Freedom of Information/Privacy Acts Document Processing System to "locate any records on the same topic that had

9

already been processed and released." *Id.* ¶ 30, J.A. 323. Third, the FBI asked the division in which the NICS is located to conduct its own search. *Id*. ¶¶ 22, 37, J.A. 318–19, 324.

That process yielded fifty-nine pages of responsive documents that had previously been processed for another FOIA request. *Id.* ¶ 12, J.A. 315. The FBI informed Watkins that it was withholding those documents in their entirety. Letter from David M. Hardy, Section Chief, Record/Info. Dissemination Section, Records Mgmt. Div., FBI, to Seth Watkins (Nov. 5, 2015), J.A. 97. Shortly thereafter, the FBI advised Watkins that it had reviewed another twelve pages of materials and was consulting with another government agency (the VA) regarding their release. Letter from David M. Hardy, Section Chief, Record/Info. Dissemination Section, Records Mgmt. Div., FBI, to Seth Watkins (Jan. 20, 2016), J.A. 341. After consulting with the VA, the FBI released those twelve pages, which included a 2012 Memorandum of Understanding between the FBI and the VA indicating that the VA transmitted names to the FBI for inclusion in the NICS at least quarterly using encrypted compact discs. Letter from David M. Hardy, Section Chief, Record/Info. Dissemination Section, Records Mgmt. Div., FBI, to Seth Watkins (June 23, 2016), J.A. 344; *see generally* 1st Hardy Decl. ¶¶ 8–10, J.A. 314–15.

After Watkins filed its complaint, the FBI again contacted the division in which the NICS is located to "verify the results of their original search." 1st Hardy Decl. ¶ 38, J.A. 325. The FBI also contacted the author of the 2012 Memorandum of Understanding and the FBI employee who received the compact discs from the VA, neither of whom was aware of an alternative system in which responsive documents would be stored. *Id.* ¶¶ 38–39, J.A. 325. And the FBI reexamined the fifty-nine pages it initially deemed responsive to Watkins's

10

request and determined that they were not in fact responsive. *Id*. ¶ 41, J.A. 326.

During summary judgment briefing, the FBI conducted a final supplemental search. The FBI declarations explain that because Watkins "posit[ed] the FBI should have included in its searches several additional term combinations," the FBI again searched the automated indexes in the Sentinel and Automated Case Support systems (which had been used to search the Central Records System) using most of the search term combinations Watkins suggested. 2d Hardy Decl. ¶ 8 & n.1, J.A. 586–87. The FBI also observed that the 1998 Memorandum of Understanding between the VA and the FBI released by the VA, which Watkins had attached to its opposition to summary judgment, contained two FBI file numbers that did not come up in the FBI's original search. *Id*. ¶ 9, J.A. 587. The FBI "determined it needed to supplement its original search by searching through these files," which yielded additional responsive documents. *Id*. The FBI released some documents in full and others in part with portions withheld under various exemptions. *Id*. ¶ 10, J.A. 587.

We conclude that the FBI's search was adequate. The FBI declarations "describe[] with particularity the files that were searched, the manner in which they were searched, and the results of the search," *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994), and show that the agency made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested," *In re Clinton*, 970 F.3d 357, 367 (D.C. Cir. 2020) (citation omitted).

Watkins asserts that the FBI's search was inadequate because it turned up only a single record from 2010 through 2017, despite evidence that the VA had identified to the FBI a

11

substantial number of veterans and other VA beneficiaries to be added to the NICS during that timeframe. The "adequacy of a FOIA search," however, "is generally determined not by the fruits of the search, but the appropriateness of the methods used to carry out the search." *Ancient Coin Collectors Guild v. U.S Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citation omitted). And "belated disclosure of even responsive documents," such as those located following the FBI's supplemental search of the two FBI file numbers, "does not necessarily undermine the adequacy of an agency's search." *In re Clinton*, 970 F.3d at 367 (emphasis omitted). The FBI's original and supplemental search efforts, taken together, were reasonable. *See Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013) ("[B]y the time a court considers the matter, it does not matter that an agency's initial search failed to uncover certain responsive documents so long as subsequent searches captured them." (emphasis omitted)).

Watkins next seeks to demonstrate the inadequacy of the FBI's search by pointing to the FBI's acknowledgment that it did not anticipate finding responsive documents in the Central Records System. But we do not fault the FBI for searching a record system in which records were unlikely to be found when it also conducted additional searches that were "more likely to elicit responsive records." 2d Hardy Decl. ¶ 7, J.A. 586.

Finally, Watkins contends that the FBI should have used the search terms "Veterans Health Administration," "VHA," "Veterans Benefits Administration," and "VBA," which Watkins had included in its list of "obvious" search term combinations in briefing before the district court. The FBI, however, crafted searches reasonably tailored to locate responsive documents, and indeed used most of Watkins's suggested terms.

12

In all, the FBI searched the following terms in the Central Records System: "Veterans Affairs Gun," "VA Gun," "Veterans Affairs," "VA," "National Instant Criminal Background Check Veterans Affairs," "National Instant Criminal Background Check VA," "NICS Veterans Affairs," "NICS VA," "mental defective," "mental defectives," "Brady Act," "firearm VA," "firearm Veterans Affairs," "firearm veteran," "firearm veterans," "firearms VA," "firearms Veterans Affairs," "firearms veteran," "firearms veterans," "handgun VA," "handgun Veterans Affairs," "handgun veteran," "handgun veterans," "handguns VA," "handguns Veterans Affairs," "handguns veteran," "handguns veterans," "NICS Veteran," and "NICS Veterans." 1st Hardy Decl. ¶ 40, J.A. 325–26; 2d Hardy Decl. ¶ 8, J.A. 586–87.

The FBI's failure to use four more search term combinations to which Watkins pointed—"Veterans Health Administration," "VHA," "Veterans Benefits Administration," and "VBA"—does not render the agency's search unreasonable, especially because nothing in Watkins's FOIA request indicated that those terms were essential. Indeed, Watkins still provides no basis for its claim that "Veterans Health Administration" or "VHA" are even relevant search terms with regard to the records being sought. What is more, the question before us "is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). We conclude that the FBI's search satisfied that standard.

2.

We next consider the adequacy of DOJ's search. DOJ "has a decentralized system for responding to FOIA requests, with each component designating a FOIA office to process records

13

from that component." 28 C.F.R. § 16.3(a)(1). To promote the agency's ability to respond to requests in an efficient manner, DOJ's regulations instruct requesters to "write directly to the FOIA office of the component that maintains the records being sought." *Id.* And the regulations refer to DOJ's FOIA Reference Guide, which "contains descriptions of the functions of each component and provides other information that is helpful in determining where to make a request." *Id.* The regulations and the FOIA Reference Guide state that requesters may also send requests to a Mail Referral Unit, which "will forward the request to the component(s) that it determines to be most likely to maintain the records that are sought." *Id.* § 16.3(a)(2); *see DOJ FOIA Reference Guide*, U.S. Dep't of Just. (last updated Dec. 22, 2022), https://www.justice.gov/oip /department-justice-freedom-information-act-reference-guide [https://perma.cc/7L27-XTN6].

Watkins submitted its FOIA request to the attention of the Office of the Attorney General. DOJ's Office of Information Policy, which processes records from the Office of the Attorney General among other components, sent Watkins a letter acknowledging receipt "on behalf of the Office of the Attorney General." Letter from Debra Moore, Gov't Info. Specialist, Off. of Info. Pol'y, to Seth Watkins (Nov. 20, 2015), J.A. 245–47. The letter stated that, because "[t]he records you seek require a search in another Office," DOJ "need[s] to extend the time limit to respond to your request beyond the ten additional days provided by the statute." *Id.* at 245. The letter also encouraged Watkins to direct a request to the VA "[b]ecause [Watkins] mention[ed] the VA" in its request, and informed Watkins that the Office of Information Policy had forwarded Watkins's request to the FBI. *Id.* at 246.

As the DOJ declarations explain, the Office of Information Policy then conducted a search of the Departmental Executive

14

Secretariat, the Office of the Attorney General's repository of all unclassified correspondence sent to or from the Office of the Attorney General, where the Office of Information Policy determined any potentially responsive documents would be located. 1st Brinkmann Decl. ¶¶ 12–15, J.A. 237–39. It also searched records of departed DOJ employees, and it contacted the FBI to determine if the FBI had any records of the Office of the Attorney General's participation in communications with the VA concerning the NICS. *Id.* ¶ 16 & n.5, J.A. 239–40. That process yielded no responsive records—only a control sheet related to a potentially responsive document that was no longer in DOJ custody.

After the district court's remand, the Office of Information Policy conducted a supplemental search of the Departmental Executive Secretariat using Watkins's suggested search term combinations and the same date parameters it used in the initial search. 2d Brinkmann Decl. ¶¶ 5, 10, J.A. 755, 757–58. That search located responsive documents, including two annual reports from the Attorney General to Congress pursuant to the NICS Improvement Amendments Act of 2007. DOJ released those documents with certain excisions and redactions. Letter from Timothy Ziese, Senior Supervisory Att'y for Vanessa R. Brinkmann, DOJ, to Seth A. Watkins (Jan. 31, 2020), J.A. 772–73. The Office then ran "an additional, targeted search for additional, similar reports [to the reports to Congress] in the same locations utilized for its prior searches . . . , without time restriction, using a search term combination made up of terms appearing in the titles of the reports located by [the Office of Information Policy in its initial search]: 'Report to Congress' AND 'NICS,'" but it located no additional reports. 2d Brinkmann Decl. ¶ 14, J.A. 760. DOJ did not search records of any other DOJ components besides the Office of the Attorney General. *See id.* ¶ 9, J.A. 757.

15

Watkins argues that DOJ's search was inadequate because it failed to turn up certain documents, including several years of the annual reports sent from the Attorney General to Congress pursuant to the NICS Improvement Amendments Act of 2007.  We have established that an "agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004).

Watkins's belief that more reports to Congress exist than were located, however, is not "mere speculation." *Id.*  Rather, since Congress enacted the NICS Improvement Amendments Act of 2007, the Attorney General has been required by law to "submit an annual report to Congress that describes the compliance of each department or agency" with the NICS requirements.  34 U.S.C. § 40901(e)(1)(E).  And one of the documents that DOJ released indicates that the sixth annual report was transmitted in 2015, suggesting that annual reports have been submitted to Congress since 2010.  *See* Letter from Peter J. Kadzik, Assistant Att'y Gen., to Paul D. Ryan, Speaker, U.S. House of Reps. (Nov. 30, 2015), J.A. 849.  Yet only two were located in response to Watkins's FOIA request.

DOJ attributes the failure of its searches to unearth the rest of the annual reports to the scope of Watkins's request.  DOJ's declarations explain that Watkins's request sought records specifically of the Office of the Attorney General, but the reports were transmitted to Congress by a different DOJ component, the Office of Legislative Affairs.  Watkins suggests that DOJ should have expanded the scope of its search beyond the Office of the Attorney General to the Office of Legislative Affairs to uncover the rest of the annual reports.  Watkins asks, "If OAG delegated responsibility to the Office

16

of Legislative Affairs with respect to the reports mandated by the Act, how is a FOIA requester to know that?" Watkins Opening Br. 41.

An agency of course "cannot impose requirements on requesters that take on the character of a shell game, imposing unwarranted burdens on requesters without apparent justification." *Clemente v. FBI*, 867 F.3d 111, 119 (D.C. Cir. 2017). And entirely apart from the recovery of records through a FOIA request and search, it is far from clear why reports required by law to be annually transmitted to Congress are not publicly available as a matter of course. But as to the adequacy of DOJ's search, we cannot conclude that it was unreasonable in the circumstances of this request to search only records of the Office of the Attorney General.

As noted, DOJ's FOIA regulations instruct that, in light of DOJ's "decentralized system for responding to FOIA requests," a requester "should write directly to the FOIA office of the component that maintains the records being sought." 28 C.F.R. § 16.3(a)(1). The regulations further provide that, if a requester is uncertain about which component has the records she seeks, she may send her request to a Mail Referral Unit, which will forward the request to the component(s) it determines to be most likely to maintain responsive documents. *See id.* § 16.3(a)(2). And if a component that receives a FOIA request determines that it was "misdirected" within DOJ, the component will "route the request to the FOIA office of the proper component(s)." *Id.* § 16.4(c). A requester also can always send a request to more than one DOJ component.

Watkins submitted the request at issue specifically to the attention of one component: "Attn: Office of the Attorney General (OAG)." Submission from Seth A. Watkins to DOJ FOIA Requests (Oct. 21, 2015), J.A. 75. DOJ handled that

17

request in accordance with its FOIA regulations and guidance. Upon receipt of the request, the Office of Information Policy—processing the request for the Office of the Attorney General—determined that the request was partially misdirected to the extent that it sought FBI records (which the FBI would maintain), and thus forwarded the request to the FBI. 1st Brinkmann Decl. ¶ 11, J.A. 237; 2d Brinkmann Decl. ¶ 13, J.A. 759–60; *see* 28 C.F.R. § 16.4(c). (It is unclear from the record whether the Office of Information Policy had reason to be aware that Watkins itself had already submitted a request to the FBI.) The Office found no basis for believing the request it received had otherwise been misdirected. 2d Brinkmann Decl. ¶ 13, J.A. 759–60.

Nor has Watkins identified any reason that the Office of Information Policy should have concluded that Watkins's request had otherwise been misdirected—for instance, that Watkins should have directed it to the Office of Legislative Affairs instead of the Office of the Attorney General. The request did not reference the Office of Legislative Affairs, documents transmitted by that Office, or the specific annual reports to Congress on which Watkins now focuses. Instead, the request sought a broad category of records as to which the Office of the Attorney General could (and did) have responsive documents. Accordingly, the Office of Information Policy searched that Office's records. Given the phrasing of Watkins's FOIA request targeted to the Office of the Attorney General and the absence of any basis for believing the request had been misdirected, and in light of DOJ's regulations mandating that requests for DOJ components be sent directly to the FOIA office of the component whose records are sought, nothing in the circumstances of this case required that the search extend beyond the Office of the Attorney General's records to encompass the records of another component.

18

True, Watkins's request—like its requests to other agencies—included language stating that "[i]f DOJ's OAG does not have custody or control over certain requested and responsive records but knows or believes that another component of DOJ subject to FOIA does, please forward this FOIA Request to the appropriate person and inform us that you have done so." Email from Seth Watkins to Seth Watkins (Oct. 21, 2015), J.A. 78. To the extent Watkins believes that language required DOJ to expand the scope of its search to include the Office of Legislative Affairs's records, we disagree.

At the time the Office of Information Policy received the request directed to the Office of the Attorney General, as explained, there was no reason to conclude that a search should be conducted of the Office of Legislative Affairs's records instead of—or in addition to—the Office of the Attorney General's records. If Watkins instead means to suggest that *after* the Office of Information Policy conducted its initial and supplemental searches of the Office of the Attorney General's records, it should have examined every responsive document resulting from the searches to ascertain whether any document might suggest that another, separate component might also possess responsive documents, and if so, should have conducted or provided for a search of that other component as well, that is incorrect. There was no requirement in the circumstances of this case for the Office of Information Policy to conduct that kind of document-by-document review of the results of its searches of the Office of the Attorney General's records to assess whether any responsive document might suggest that a search of another component could produce additional responsive documents.

First, DOJ did not understand Watkins's "please forward" language to ask for any such second-stage, document-by-document examination of the results of the searches of records

19

of the Office to whom the request had been directed. Rather, DOJ understood Watkins's language to pertain to determining at the outset which component's records should be searched, not determining later based on the results of that search whether additional searches of other components might also produce responsive documents. DOJ, that is, understood Watkins's language "to be consistent with its obligation" under its regulations "to route misdirected FOIA requests—indeed, as noted above, [the Office of Information Policy] did in fact route [Watkins's] request to the FBI." 2d Brinkmann Decl. ¶ 13, J.A. 759–60. DOJ did not understand Watkins's language to require it "to reevaluate, in perpetuity"—i.e., even after determining which Office should be searched and conducting searches of that Office's records—"its determination as to which office the FOIA request was made." *Id.*, J.A. 760. Watkins does not respond to DOJ's understanding or suggest why DOJ's understanding was unreasonable.

Second, and in any event, even if Watkins's "please forward" language had asked DOJ in sufficiently clear terms to scrutinize the results of a search of the Office of the Attorney General's records to assess whether responsive documents might be found in a subsequent search of another component (and, if so, to conduct such a search), DOJ would not have been obligated to do so. Watkins points to nothing in DOJ's FOIA regulations—or in FOIA itself—that requires that kind of follow-on examination of responsive records to identify the existence of potentially responsive records in another component and to conduct an ensuing search of that other component's records. Nor does Watkins argue that the Office of Information Policy was required to engage in that examination and subsequent search because it happens to process FOIA requests for both the Office of the Attorney General and the Office of Legislative Affairs. Rather, Watkins relies on the fact that "organizationally, the Office of

20

Legislative Affairs sits below [the Office of the Attorney General]." Watkins Opening Br. 41. But there is no requirement under DOJ's regulations—or under FOIA itself— that a FOIA office assess whether responsive documents might be found in a subsequent search of any component that "sits below" the component whose records were initially searched or to conduct a subsequent search of that other component if so. *Id.* And nothing in the statute (or in DOJ's regulations) enables a FOIA requester to impose that kind of obligation on an agency by asking for it. *Cf. Mobley v. CIA*, 806 F.3d 568, 582 (D.C. Cir. 2015) (an approach that "would allow a requester to dictate, through search instructions, the scope of an agency's search" would "undermine[]" "the reasonableness test for search adequacy long adhered to in this circuit").

To be sure, our decisions have indicated that an agency in certain circumstances must conduct an additional search of its records based on the results of its initial search. That obligation exists in the "rare case . . . in which an agency record contains a lead so apparent"—i.e., "a lead that is both clear and certain"—that the agency "cannot in good faith fail to pursue it." *Kowalczyk v. DOJ*, 73 F.3d 386, 389 (D.C. Cir. 1996); *see Campbell v. DOJ*, 164 F.3d 20, 28–29 (D.C. Cir. 1998) (holding that an agency could not decline to search beyond one record system when records in that system themselves indicated that there were undiscovered responsive records in other record systems, because "[a]n agency has discretion to conduct a standard search in response to a general request, but it must revise its assessment of what is 'reasonable' in a particular case to account for leads that emerge during its inquiry"); *see also, e.g.*, *Reps. Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 406–07 (D.C. Cir. 2017) (*RCFP I*).

Watkins, though, does not invoke those decisions (or the understanding they establish) in connection with the adequacy

21

of DOJ's search. Nor does Watkins suggest that the obligation in certain circumstances to conduct an additional search based on initial search results could apply when, as here: the agency has adopted regulations specifically calling for FOIA requests to be directed to the FOIA office of the particular component whose records are sought; the requester accordingly submits its request to the attention of a particular component that could (and did) have responsive records; and the additional search would be a search of another component. *Cf. Clemente*, 867 F.3d at 119 (distinguishing *Campbell* and noting that, in any event, "the FOIA request in *Campbell* predated the agency's promulgation of the regulation requiring requests for records held by [an FBI] field office to be directed to that office"). And to the extent that Watkins might believe that the two reports to Congress that the Office of Information Policy's search uncovered contained a "lead" that the Office was obligated to pursue, Watkins does not explain how the lead was sufficiently "clear and certain" to meet our decisions' "exacting standard." *RCFP I,* 877 F.3d at 407 (quoting *Kowalczyk*, 73 F.3d at 389). Nor does Watkins explain why the Office's "additional, targeted search for additional, similar reports" in the Office of the Attorney General's records, 2d Brinkmann Decl. ¶ 14, J.A. 760—where it had uncovered the two reports in the first instance—did not satisfy any such obligation.

Watkins asserts that the Office of Information Policy's letter acknowledging receipt of Watkins's FOIA request itself indicated a plan to forward the request to the Office of Legislative Affairs. Watkins relies on the letter's statement that "[t]he records you seek require a search in another Office." Letter from Debra Moore, Gov't Info. Specialist, Off. of Info. Pol'y, to Seth Watkins (Nov. 20, 2015), J.A. 245. But Watkins asks us to read too much into that sentence, which says nothing about the Office of Legislative Affairs or about forwarding the request to another component of DOJ. DOJ explains that, in

22

referring to the need to conduct a search in "another Office," the Office of Information Policy was pointing to the Office of the Attorney General, not the Office of Legislative Affairs.

Of course, Watkins can submit a FOIA request to the Office of Legislative Affairs, as it could have done at any point during the litigation—including when Watkins acknowledged that the "the full set of reports at issue apparently are only within the possession, custody, or control of DOJ's [Office of Legislative Affairs]." Pl.'s Reply in Support of Its Renewed Cross-Mot. for Summ. J. at 6, *Watkins L. & Advoc., PLLC v. U.S. Dep't of Veterans Affs.*, 412 F. Supp. 3d 98 (D.D.C. 2019) (No. 1:17-cv-01974); *see Kowalczyk*, 73 F.3d at 389 ("[I]f the requester discovers leads in the documents he receives from the agency, he may pursue those leads through a second FOIA request."). But DOJ was not required to search that Office's records based on the FOIA request at issue here.

Watkins last contends that DOJ's search was inadequate because, in its supplemental search, DOJ failed to use the date of the supplemental search (January 2020) as the cut-off date for responsive documents, and instead used the date of the initial search (September 2017). But the choice of a cut-off date need only be reasonable under the circumstances, and it was reasonable for DOJ to use the date of its initial search as the cut-off date. *See Negley v. FBI*, No. 11-5296, 2012 WL 1155734, at *1 (D.C. Cir. Mar. 28, 2012). The object of the supplemental search was to expand the search terms beyond those used in the initial search, and conducting the same search again (including with the same date parameters), except with the new search terms, is, as DOJ explains, a reasonable way to effectuate that purpose. *See* 2d Brinkmann Decl. ¶¶ 5, 10, 15, J.A. 755, 757–58, 760–61. What is more, Watkins states only conclusorily that DOJ should have used an updated search, without any further argument disputing the sufficiency of

23

DOJ's decision on its merits. As with Watkins's other challenges to the adequacy of DOJ's search, we sustain DOJ's search against this challenge as well.

3.

Watkins contends that the district court erred in applying a presumption of good faith to the FBI and DOJ declarations. We have explained that agency affidavits that are "relatively detailed and non-conclusory" are "accorded a presumption of good faith." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted). Here, both agencies' declarations satisfy that standard. Because Watkins's claims about the purported inadequacies of the agencies' searches raise no concerns about the declarants' (or the agencies') good faith, we find no error in the district court's grant of the good faith presumption to the FBI and DOJ declarations.

B.

We now turn to Watkins's challenge to the VA's withholdings. "Because the government bears the burden of establishing that a FOIA exemption applies, we may affirm only if we detect no genuine issue of material fact as to an exemption's applicability." *RCFP II*, 3 F.4th at 361. We hold that the VA did not adequately explain its basis for invoking the deliberative-process and attorney-client privileges to justify its withholdings.

1.

"FOIA exempts nine categories of records from the government's otherwise broad duty of disclosure." *AquAlliance v. U.S. Bureau of Reclamation*, 856 F.3d 101, 103 (D.C. Cir. 2017). This case concerns Exemption 5, which

24

protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).

That exemption encompasses the deliberative-process and attorney-client privileges.  The deliberative-process privilege shields documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (citation omitted).  The attorney-client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice."  *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977).

When an agency invokes a FOIA exemption, it bears the burden to show that a withheld document fits within the exemption.  *RCFP II*, 3 F.4th at 357, 361.  The agency "must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply."  *Mead Data*, 566 F.2d at 251.  An agency can carry that burden by submitting a *Vaughn* index that adequately explains the decision to withhold certain documents.  *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).  The agency can also present supporting affidavits that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Elec. Frontier Found. v. DOJ*, 739 F.3d 1, 7 (D.C. Cir. 2014) (citation omitted).

25

2.

Watkins challenges the VA's withholding of sixty-seven documents pursuant to the deliberative-process and attorney-client privileges. The VA initially contends that, for all but eight of the sixty-seven challenged documents, Watkins forfeited its challenge by failing to "specifically" identify the shortcomings of the VA's justifications on a document-by-document basis. Gov't Br. 48. We disagree. In the circumstances, Watkins could use the eight documents as examples and otherwise argue on an across-the-board basis that the VA's justifications do not reasonably demonstrate that the withheld documents fall within the deliberative-process or attorney-client privileges. Watkins's articulation of its arguments gave the VA adequate notice of the nature of the challenges to the agency's withholdings.

To justify the withholdings, the VA relies upon the Knight Declaration and its *Vaughn* index. Those materials, separately and in combination, fall short.

The Knight Declaration devotes three brief paragraphs to justifying the VA's invocation of Exemption 5 for a total of 382 documents. The first paragraph describes the documents withheld under the deliberative-process and attorney-client privileges at a very high level of generality, in two sentences (one per privilege). Knight Decl. ¶ 11, J.A. 283. The second and third paragraphs contain three and four sentences, respectively, that recite the standards for the deliberative-process and attorney-client privileges and state in conclusory fashion that the withheld documents fit within those standards. Knight Decl. ¶¶ 16–17, J.A. 286. Nowhere does the Declaration use "reasonably specific detail" to "demonstrate that the information withheld logically falls within the claimed exemption." *Elec. Frontier Found.*, 739 F.3d at 7 (citation

26

omitted). Instead, its "claims are conclusory, merely reciting statutory standards" and "are too vague or sweeping." *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1387 (D.C. Cir. 1979).

The VA's *Vaughn* index, which asserts both privileges for all sixty-seven challenged documents, fares no better. The *Vaughn* index includes a short description of each withheld document. But like the Knight Declaration, it does not "specifically identify[] the reasons why a particular exemption is relevant" to a particular document or "correlat[e] those claims with the particular part of a withheld document to which they apply." *Mead Data*, 566 F.2d at 251. "Specificity is the defining requirement of the *Vaughn* index," *King v. DOJ*, 830 F.2d 210, 219 (D.C. Cir. 1987), yet the VA's *Vaughn* index in this case is threadbare.

As one example, the VA invokes both privileges for a record it describes in the *Vaughn* index as "Table of Contents by Tab Number- October 11, 2005 Brady Act SVAC Meeting Briefing Book Table of Contents by Tab Number — listing of documents used during the SVAC meeting." J.A. 298. There is no explanation of why either privilege protects that document. The VA tells us nothing about "what deliberative process is involved" or the "role" the Brady Act SVAC Meeting Briefing Book played "in the course of that process." *Jud. Watch, Inc. v. DOJ*, 20 F.4th 49, 56 (D.C. Cir. 2021) (citation omitted). Nor does it reveal the "nature of the decisionmaking authority vested in the officer or person issuing the disputed document," the "relative positions in the agency's chain of command occupied by the document's author and recipient," or even who prepared the document. *Id.* (citation omitted). Similarly, neither the *Vaughn* index nor the Knight Declaration indicates that the document is related to a communication between an attorney and his client for the

27

purposes of obtaining legal advice.  *Cf. Mead Data*, 566 F.2d at 253.

As a second example, the VA invokes both privileges for a record it describes as "December 23, 1996, letter from VA Secretary Jesse Brown to James Claretta, ATF regarding comments to ATF on proposed regulations providing definitions for the categories of persons prohibited from receiving or possessing firearms."  J.A. 307.  We again do not know "the 'who,' i.e., the roles of the document drafters and recipients and their places in the chain of command; the 'what,' i.e., the nature of the withheld content; the 'where,' i.e., the stage within the broader deliberative process in which the withheld material operates; [or] the 'how,' i.e., the way in which the withheld material facilitated agency deliberation."  *Jud. Watch*, 20 F.4th at 56.  Nor is there any indication that Brown was seeking advice related to a legal matter or why the attorney-client privilege would be implicated.  *Cf. Mead Data*, 566 F.2d at 253.

We thus conclude that the VA failed to adequately set out its basis for asserting the deliberative-process and attorney-client privileges as to the withheld documents.  And because the VA offers no arguments about specific documents other than the eight that Watkins highlighted as illustrations, a blanket remand is appropriate.  We accordingly vacate the district court's grant of summary judgment to the VA and remand the case to the district court.  On remand, the VA may disclose the challenged documents or further elaborate on its rationale for invoking the deliberative-process and attorney-client privileges for the challenged documents.  The district court can then assess whether the VA has carried its burden to justify the withholdings and can also determine whether the VA released all segregable information.

28

\*   \*   \*   \*   \*

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of the FBI and DOJ but we vacate and remand the district court's grant of summary judgment to the VA.

*So ordered.*